**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on November 3, 2016**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 17-CR-** |
| | : | |
| **v.** | : | **Grand Jury Original** |
| | : | |
| **AMBER R. CROWDER,** | : | **Violations:** |
|     **also known as "AMBER HINES,"** | : | |
| | : | **18 U.S.C. § 1341 (Mail Fraud)** |
|     **and** | : | |
| | : | **18 U.S.C. § 1343 (Wire Fraud)** |
| **SHAUNA MARIE BRUMFIELD,** | : | |
|     **also known as "MARIE MATTHEWS,"** | : | **18 U.S.C. § 1956(h) (Conspiracy to** |
|     **also known as "SHAUNA SNELL,"** | : | **Launder Monetary Instruments)** |
| | : | |
|     **Defendants.** | : | **18 U.S.C. § 1956(a)(1)(A)(i)** |
| | : | **(Laundering of Monetary** |
| | : | **Instruments)** |
| | : | |
| | : | **22 D.C. Code §§ 3221(a),** |
| | : | **3222(a)(1) (First Degree Fraud)** |
| | : | |
| | : | **Forfeiture:** |
| | : | **18 U.S.C. § 981(a)(1)(C), 28 U.S.C.** |
| | : | **§ 2461(c), 18 U.S.C. § 982(a)(1),** |
| | : | **21 U.S.C. § 853(p)** |

**INDICTMENT**

The Grand Jury charges that:

**BACKGROUND**

At times material to this Indictment:

**The District of Columbia Public Schools**

1.    The mission of the District of Columbia Public Schools ("DCPS") was to provide

a world-class education that prepares all of its students, regardless of background or circumstance,

for success in college, career, and life.

2.      The Office of Special Education ("OSE") was part of DCPS.  It administered special education programs for DCPS students with disabilities.  Its office was located at 1200 First Street, NE, Washington, DC.  In the fall of 2013, OSE was renamed the Office of Specialized Instruction ("OSI").

### The Defendants

3.      Defendant Amber R. Crowder, also known as "Amber Hines" ("Defendant Crowder"), was a resident of the District of Columbia.  Defendant Crowder held various positions within OSE, including project coordinator, project manager, and program manager.

4.      Defendant Crowder was the account holder for Bank of America account no. XXXX XXXX 8726.

5.      Defendant Shauna Marie Brumfield, also known as "Marie Matthews" and "Shauna Snell" ("Defendant Brumfield"), was a resident of the District of Columbia.  Defendant Brumfield was a close personal friend of Defendant Crowder since childhood.

6.      On or about June 16, 2010, Defendant Brumfield purchased the real property located at 20 Todd Place, NE, Washington, DC.  The property was a residential property.

7.      From on or about June 22, 2012, through on or about January 13, 2014, Defendant Brumfield was the subscriber for the phone number XXX-XXX-4829.

### Relevant Individuals

8.      Beginning in or around October 2011, Person A began dating Defendant Brumfield. Person A worked full time as counsel for a trade association.  Person A married Defendant Brumfield on October 4, 2013.  Person A rented Apartment 1 at 234 N Street, NW, Washington, DC, from in or around May 2012 through in or around October 2012.

9.      Beginning in or around 2011, Person B began dating Defendant Crowder.  Person B was an owner and chief financial officer of a healthcare financial consulting firm.  Person B was also an owner of a restaurant management and food services business.  Person B married Defendant Crowder on June 27, 2014.

### Education Connection, LLC

10.      On or about November 18, 2011, Education Connection, LLC ("Education Connection") filed Articles of Organization with the D.C. Department of Consumer and Regulatory Affairs ("DCRA").  Its principal place of business was listed as 20 Todd Place, # 2, Washington, DC.  Defendant Brumfield was identified in DCRA filings as Education Connection's President.

11.      On or about March 23, 2012, Defendant Brumfield opened Bank of America account no. XXXX XXXX 4391 in the name of Education Connection.  Defendant Brumfield was the sole signatory on the account.

### Blackman/Jones Case

12.      The Blackman/Jones case was a consolidation of two class action lawsuits filed against the District of Columbia related to the provision of special education services to students with disabilities.  Under the terms of a consent decree entered in the case (the "Blackman/Jones Consent Decree"), DCPS, in certain circumstances, was not bound by District of Columbia or federal laws relating to procurement.  The purpose of this provision was to afford DCPS the flexibility to rapidly procure services and goods for students with disabilities through a single available source or sole source contract.

13.     As part of the Blackman/Jones Consent Decree, DCPS agreed to provide independent compensatory education services to certain class members.  The names of the class members eligible for services were confidential and not publicly available.

14.     DCPS provided a list of service providers to parents of special education students who were eligible for the services.  Providers billed DCPS directly.  In order to receive payment, providers had to submit to DCPS: (1) official authorization for the services; and (2) an invoice for the services provided.

15.     Parents were free to choose a provider on the list or any other provider.  Education Connection was not on the list of service providers sent to parents.

### DCPS Payments to Education Connection

16.     Although the names of students eligible for compensatory education services were confidential and not publicly available, Education Connection was able to solicit parents of eligible students directly and offer compensatory education services.  Some parents chose Education Connection to provide compensatory education services for their children.  Defendant Brumfield, on behalf of Education Connection, submitted the official authorization for students to be provided compensatory education services and invoices to DCPS requesting payment.

17.     Between on or about March 16, 2012, and on or about February 8, 2013, DCPS issued checks totaling approximately $61,614 to Education Connection.  Defendant Brumfield deposited the checks into Bank of America account no. XXXX XXXX 4391 in the name of Education Connection.

18.     Between on or about May 30, 2012, and on or about December 24, 2012, Defendant Brumfield transferred approximately $13,256 from the Education Connection account to

Defendant Crowder's Bank of America account no. XXXX XXXX 8726.  The payments were described as "payroll" on Education Connection's and Defendant Crowder's bank statements.

19.     In or around early July 2012, an attorney representing two special education students contacted Defendant Brumfield.   Education Connection had billed DCPS for compensatory education services for the two students.   The attorney was not familiar with Education Connection and had not provided the official authorization for the services to Education Connection.

20.     The attorney requested that Defendant Brumfield provide the authorization for the two students to receive compensatory education services.  On or about July 6, 2012, Defendant Brumfield emailed the attorney, writing, "I apologize; I thought I would be in the office today before the weekend to send you the Service Agreement for [name of student], but I will not.  We will definitely send it over to you next week.  Enjoy your weekend, Shauna Brumfield."

21.     Defendant Brumfield never provided the authorization for compensatory education services for the student referenced in her email or for the other student represented by the attorney.

**A Simple Solution, LLC**

22.     On or about August 7, 2012, A Simple Solution, LLC ("A Simple Solution") filed Articles of Organization with DCRA.  Its principal place of business was listed as 20 Todd Place, Suite 2, Washington, DC.  Defendant Brumfield was identified as the registered agent.

23.     On or about August 6, 2012, Defendant Brumfield, using the alias "Shauna Snell," established a Gmail account in the name of simplesolutions.staff@gmail.com.

24.     On or about October 15, 2012, Defendant Brumfield opened Bank of America account no. XXXX XXXX 2803 in the name of A Simple Solution.  She was the sole signatory on the account.

25.     Person A purported to be the "Branch Manager" of A Simple Solution.  Person A never received any salary or financial compensation for his purported position as A Simple Solution's "Branch Manager."

26.     Person B purported to be the "Chief Financial Officer" of A Simple Solution. Person B never received any salary or financial compensation for his purported position as A Simple Solution's "Chief Financial Officer."

27.     Defendant Brumfield used the alias "Marie Matthews" when communicating with DCPS on behalf of A Simple Solution.

### THE DCPS ADMINISTRATIVE ASSISTANT CONTRACTS WITH A SIMPLE SOLUTION

#### Introduction

28.     In the summer of 2012, OSE identified a need to hire temporary administrative assistants for the 2012 – 2013 school year.  OSE wanted the administrative assistants to aid in the scheduling of meetings related to individual education plans ("IEPs") for special education students.

29.     Defendant Crowder was tasked with identifying and recommending a company to provide the administrative assistants.  Once a company was selected, Defendant Crowder was supposed to manage the administrative assistants.

30.     Because the DCPS 2012 fiscal year ended on September 30, 2012, two separate contracts were needed to provide administrative assistants for the 2012 – 2013 school year.

31.     The process for awarding the administrative assistant contracts was conducted pursuant to the provision in the Blackman/Jones Consent Decree, which authorized single available source or sole source contracts.

32.     To justify awarding a single available source or sole source contract for administrative assistants, OSE was required to prepare a Market Survey and a Determination and Findings for a Single Available or Sole Source Pursuant to Blackman/Jones ("D&F").  Defendant Crowder, on behalf of OSE, prepared the Market Survey and D&F.

**The D.C. Supply Schedule**

33.     On or about July 23, 2012, a DCPS senior contract specialist informed Defendant Crowder in an email, "In determining contractors for the required services, your first source for possible contractors is the District's Supply Schedule."  The D.C. Supply Schedule ("DCSS") was the city's multiple-award schedule for providing commercial products and services to D.C. government agencies.  The schedule listed suppliers who could provide products and services to meet recurring needs of D.C. government agencies.  A Simple Solution was not listed on the DCSS.

34.     On or about July 27, 2012, Defendant Crowder sent emails to approximately ten vendors on the DCSS requesting price quotes for administrative support staff.

35.     On or about August 1, 2012, Defendant Crowder prepared a chart with price quotes from six vendors on the DCSS who had responded to her email.  The quoted prices for six administrative assistants ranged from $263,923.20 to $365,148.  Three of the quotes were below $300,000 and three were above $300,000.

36.     On or about August 2, 2012, the OSE Deputy Chief of Compliance sent an email to Defendant Crowder and other DCPS officials.  In the email, the OSE Deputy Chief of Compliance stated that approximately $300,000 had been listed in the GSR for the administrative assistant contract.  GSR was an acronym for Goods and Services Request.  The $300,000 amount was a cost estimate for six administrative assistants for the 2012 - 2013 school year.

37.     On or about August 3, 2012, Defendant Crowder sent an email to the OSE Deputy Chief of Compliance.  In the email, Defendant Crowder asked whether the vendor for the contract had to be on the DCSS and stated, "[s]omeone recommended a vendor to me that specialized in supporting school staff and they have some AAs with special education experience."  The OSE Deputy Chief of Compliance advised Defendant Crowder that the vendor did not need to be on the DCSS, but OSE needed a price quote from the vendor.

## Procurement Automated Support System

38.     On or about August 7, 2012, Defendant Crowder sent an email to an OSE Program Director stating, "The vendor I chose is not in the PASS.  I'm going to try and expedite that process."  PASS was the D.C. government Procurement Automated Support System.

39.     On or about August 7, 2012, Defendant Crowder sent an email to "Maria" (i.e., "Marie Matthews," the alias for Defendant Brumfield) at simplesolutions.staffing@gmail.com. Defendant Crowder wrote, "It was good speaking with you.  Please see the attached paperwork to become an approved vendor in the PASS.  Please call me at the number below if you have any questions."  The attached paperwork included a DCPS Master Supplier Information Collection Form ("Supplier Information Form") and an IRS Form W-9 "Request for Taxpayer Identification Number and Certification."

40.     On or about August 7, 2012, Defendant Brumfield, using the alias "Marie Matthews," sent an email from simplesolutions.staff@gmail.com to a DCPS Operations Assistant.  Defendant Crowder was copied on the email.  Defendant Brumfield attached the forms needed for A Simple Solution to be entered into PASS.  The address listed for A Simple Solution on the Supplier Information Form and Form W-9 was 234 N Street NW, Suite 1, Washington, DC. The contact name for A Simple Solution on the Supplier Information Form was "Marie Matthews."

41.     The DCPS Operations Assistant was unable to enter A Simple Solution into PASS because, among other reasons, A Simple Solution's address on the Supplier Information Form and Form W-9 did not match the address for A Simple Solution in Dun and Bradstreet, a public database of registered businesses.

42.     On or about August 17, 2012, Defendant Crowder was informed via email that A Simple Solution had not been approved for entry into PASS due to the differing addresses. Defendant Crowder sent the following email response to the OSE Deputy Chief of Compliance and the OSE Procurement Analyst: "I just spoke with the vendor.  The issue is that they have more than one office and didn't realize that the office on the mailing address for the DCs [sic] form needed to match the registered address.  They are resubmitting the forms right now using the registered address only."

43.     On or about August 17, 2012, Defendant Brumfield, using the alias "Marie Matthews," sent an email from simplesolutions.staff@gmail.com to the DCPS Operations Assistant.  Defendant Brumfield wrote, "We have more than one office and didnt [sic] realize the correspondence address on the forms needed to match.  We have no problem changing it to the other office so that everything matches.  Attached are are [sic] forms with updated address." Defendant Brumfield attached a Supplier Information Form and Form W-9, which both listed the address for A Simple Solution as 20 Todd Place, Suite 2, Washington, DC.

**The Market Survey and D&F**

44.     On or about August 6, 2012, Defendant Crowder emailed a Market Survey and D&F to an OSE Program Director.  The Market Survey was dated August 3, 2012.  The Market Survey compared the ability of "Simple Solutions" and two DCSS vendors to satisfy certain criteria for providing temporary administrative assistants.  As of August 6, 2012, however, A

Simple Solution did not exist as a registered corporation and had no bank account.  A Simple Solution did not begin interviewing applicants for the administrative assistant positions until in or around the middle of August 2012.

45.     For the criteria, "Can Provide 6 Administrative Assistants immediately," Defendant Crowder answered "yes" for "Simple Solutions."

46.     For the criteria "has staff with experience in education," Defendant Crowder indicated that "Simple Solutions" "specializes in providing staff to educational institutes."

47.     For the "cost" criteria, Defendant Crowder wrote that "Simple Solutions" could provide the temporary administrative assistants for $298,800.  On the Market Survey, Defendant Crowder listed two DCSS vendors that had provided price quotes above $300,000, even though she knew that three other DCSS vendors had provided price quotes below $300,000.

48.     Defendant Crowder listed "Marie Mathews," with a phone number of XXX-XXX-4829, as the contact person for "Simple Solutions."

49.     The D&F had a section entitled, "Facts Which Justify a Single Available Source or Sole Source Procurement."  Under that section, Defendant Crowder wrote:

> Simple Solutions ("SS") is a full-service Staffing and Human Resources Management firm that assists educational institutions with the administrative burden of recruiting, training, and scheduling staff.  They specialize in providing consultants, temporary staff, or direct hiring services to education focused companies throughout the United States.  SS has provided the OSE with excellent customer service by being highly responsive, proving that if any issues arise, they will be easily reachable.  Additionally, when compared to other temporary staffing agencies in the area, they gave a fair and reasonable price.

> As a staffing agency specializing in placing personnel with experience in education, SS is able to meet the unique administrative needs of the OSE.  They are able to provide us with personnel who are familiar with how schools are run and the special education process so that more time can be spent focusing on meeting compliance metrics rather than on, recruitment, screening, and training.

## The Price Quote from A Simple Solution

50.     On or about August 14, 2012, a DCPS Procurement Analyst informed Defendant Crowder that the Procurement Analyst needed a formal price quote from A Simple Solution.

51.     On or about August 14, 2012, Defendant Crowder emailed an A Simple Solution price quote, backdated to July 30, 2012, to the Procurement Analyst.  The price quote listed the price for six administrative assistants as $298,800.  Any questions about the quote were to be directed to "Marie Matthews" at XXX-XXX-4829.

## The First Administrative Assistant Contract

52.     On or about August 22, 2012, Defendant Crowder sent an email to the DCPS Deputy Chief Procurement Officer and other DCPS employees.  In the email, Defendant Crowder stated that OSE chose A Simple Solution "to provide the administrative support staff because they specialize in providing personnel with experience in education . . . By providing us with staff that has knowledge and background in special education and education, we will be able to devote our attention to the schools, and not focus on in depth training of the IEP process."

53.     OSE chose A Simple Solution to provide administrative assistants in reliance on the information provided by Defendant Crowder in the D&F and Market Survey, as well as Defendant Crowder's recommendation in her capacity as an OSE official.

54.     On or about August 27, 2012, DCPS entered into the "Blackman Jones Contract for Administrative Assistant Services" with A Simple Solution.  The contract expired on September 30, 2012.

55.     The contract required A Simple Solution to supply six temporary administrative assistants for 40-hour work weeks within one week of the execution of the contract.  The cost of the contract was not to exceed $49,800.

56.     Under the terms of the contract, A Simple Solution was required to submit monthly invoices detailing the services provided by its employees and their hours worked.  An authorized official of A Simple Solution had to sign the invoices.  The OSE representative overseeing the contract had to verify that the services listed in the invoices had been provided.  Defendant Crowder was an OSE representative overseeing the contract.

57.     Defendant Crowder was listed as a "key point of contact" for DCPS in the contract.

58.     Person B signed the contract on behalf of A Simple Solution as its "Chief Financial Officer."

### The Second Administrative Assistant Contract

59.     On or about September 26, 2012, DCPS entered into a second "Blackman Jones Contract for Administrative Assistant Services" with A Simple Solution.  The contract expired on August 17, 2013.

60.     The contract contained the same terms regarding the submission of A Simple Solution invoices to OSE as the August 27, 2012 contract.  The cost of the contract was not to exceed $249,000.  Defendant Crowder was again listed as a "key point of contact" for DCPS in the contract.

61.     Person A signed the contract as the "Branch Manager" for A Simple Solution.

62.     On or about September 28, 2012, Defendant Crowder sent an email to the OSE Deputy Chief of Compliance.  In the email, Defendant Crowder wrote, "The contact Person I deal with is Marie Matthews.  However, the person who signed the Contract is [Person A].  He is the business Manager."

63.     The Deputy Chief of Compliance asked in a reply email for "Marie's title." Defendant Crowder responded in an email that Marie Matthews was the "HR manger [sic]."

### Submission of A Simple Solution Invoices to DCPS

64.     Defendant Brumfield, using the alias "Marie Matthews," submitted A Simple Solution invoices to DCPS officials, including Defendant Crowder.  The invoices detailed the amount owed to A Simple Solution for work performed by the administrative assistants.  The invoices covered the time period from September 10, 2012, through September 20, 2013.  The invoices were signed in the name of "Marie Matthews," above a signature line for "Marie Matthews, A Simple Solution, LLC."

65.     For example, on or about October 19, 2012, Defendant Brumfield, using the alias "Marie Matthews," sent an email from simplesolutions.staff@gmail.com to Defendant Crowder's DCPS email account.  Defendant Brumfield attached an A Simple Solution invoice signed in the name of "Marie Matthews" for the September 10, 2012, through September 28, 2012, billing period.  In the email, Defendant Brumfield wrote, "Good Morning Ms. Crowder, Attached is a copy of the September invoice.  Enjoy your day, Marie Matthews."

66.     On or about October 19, 2012, a DCPS Procurement Analyst, in an email, advised Defendant Crowder that A Simple Solution invoices would no longer be accepted without individual timesheets for each administrative assistant.

67.     On or about October 19, 2012, Defendant Crowder transferred from OSE to a position at a DCPS high school.

68.     On or about October 19, 2012, Defendant Crowder sent an email to an OSE Program Director and an OSE Special Education Specialist, with a copy to simplesolutions.staff@gmail.com.  Defendant Crowder wrote:

Good Afternoon,

My contact at the Temp Company is Marie Matthews (cc'd) and info below.

Marie,

[OSE Program Director] and [OSE Special Education Specialist] will be taking over my duties as I transition into my new position.

69.     On or about October 21, 2012, Defendant Brumfield sent an email from simplesolutions.staff@gmail.com to Defendant Crowder's DCPS email account.  In the email, Defendant Brumfield wrote, "Just sign this and then I will copy it and fill it in for each employee." The email was not signed.  Defendant Brumfield attached a blank A Simple Solution timesheet to the email.  The timesheet required the signature of an A Simple Solution employee and an OSE "supervisor."

70.     Defendant Crowder signed A Simple Solution employee timesheets as the OSE "supervisor" for time sheets through the pay period ending October 19, 2012.

71.     On or about December 6, 2012, Defendant Brumfield, using the alias "Marie Matthews," sent an email from simplesolutions.staff@gmail.com to an employee in the DCPS Office of Chief Financial Officer.  In the email, Defendant Brumfield identified herself as "Marie Matthews from A Simple Solution."  She wrote, "We submitted an invoice on November 3, 2012 in the amount of $25,825.00 for October services," and "just wanted to follow up and ensure that it is being processed as we have not yet received anything."

72.     On or about September 30, 2013, Defendant Brumfield became aware that law enforcement was investigating Education Connection and A Simple Solution.  For A Simple Solution invoices covering the time period from September 23, 2013, through December 27, 2013, Defendant Brumfield submitted invoices to DCPS that were signed in the name of Shauna Brumfield.  Defendant Brumfield did not use the alias "Marie Matthews" for these invoices.

73.     On or about December 19, 2013, an OSI Interim Director sent an email to "Ms. Matthews" at simplesolutions.staff@gmail.com.  Defendant Brumfield sent a reply email from

simplesolutions.staff@gmail.com to the Interim Director.   In the email, Defendant Brumfield wrote, "This is Shauna Snell.  Ms. Matthews is unfortunately no longer with us."

### DCPS Payments to A Simple Solution

74.     From on or about October 31, 2012, to on or about March 31, 2014, DCPS mailed checks payable to A Simple Solution based on the invoiced amounts.  The checks were mailed via the U.S. Postal Service to 20 Todd Place, NE, Ste 2, Washington, DC.

75.     The total dollar value of the DCPS checks payable to A Simple Solution was approximately $222,000.   Defendant Brumfield deposited the checks into Bank of America account no. XXXX XXXX 2803 held in the name of A Simple Solution.

### Payments to Defendant Crowder

76.     Beginning on or about January 10, 2013, and continuing to on or about August 28, 2013, Defendant Brumfield caused transfers to be made from Bank of America account no. XXXX XXXX 2803 held in the name of A Simple Solution to Bank of America account no. XXXX XXXX 8726 held in the name of Defendant Crowder.

77.     The total amount of the payments that Defendant Brumfield caused to be transferred from A Simple Solution to Defendant Crowder was approximately $19,164.   The transfers were described as "payroll" on A Simple Solution's bank statements and Defendant Crowder's bank statements.

### COUNTS ONE THROUGH FIVE
### (Mail Fraud)

### The Scheme to Defraud

78.     Paragraphs 1 through 77 are incorporated here.

79.     Beginning in or about July 2012 through on or about April 9, 2014, in the District of Columbia and elsewhere, Defendant Brumfield, Defendant Crowder, and Person B, knowingly

devised, intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property from the District of Columbia by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, in connection with the awarding of DCPS administrative assistant contracts to A Simple Solution.

### The Purpose of the Scheme

80.     The purpose of the scheme to defraud was for Defendant Brumfield and Defendant Crowder to unlawfully enrich themselves by fraudulently inducing DCPS to award two contracts for administrative assistants to A Simple Solution.

### The Manner and Means of the Scheme

81.     It was a part of the scheme to defraud that Defendant Brumfield used the alias "Marie Matthews" when communicating with DCPS on behalf of A Simple Solution, and Defendant Crowder represented to DCPS officials that "Marie Matthews" was the A Simple Solution contact person, to fraudulently conceal from DCPS that Defendant Crowder was recommending the awarding of the administrative assistant contracts to A Simple Solution, the company established by Defendant Brumfield, her close personal friend since childhood, and that Defendant Crowder would be overseeing contracts involving the payment of over $200,000 to Defendant Brumfield's company.

82.     It was a further part of the scheme to defraud that Defendant Brumfield used the alias "Marie Matthews" when communicating with DCPS on behalf of A Simple Solution to fraudulently conceal from DCPS that A Simple Solution was controlled by the same person, Defendant Brumfield, who had been and was billing DCPS for compensatory education services purportedly provided by Education Connection to special education students.

83.     It was a further part of the scheme to defraud that Defendant Crowder falsely claimed that "someone" recommended A Simple Solution to her to make it appear that she had no connection to anyone associated with A Simple Solution when in fact Defendant Crowder was a close personal friend of Defendant Brumfield since childhood.

84.     It was a further part of the scheme to defraud that Defendant Brumfield, Defendant Crowder, and Person B fraudulently made it appear that A Simple Solution was an established and reputable company when in fact it had only been incorporated on August 7, 2012, had first opened a bank account on October 15, 2012, and was operated from Defendant Brumfield's residence, by having Person B sign the August 27, 2012 administrative assistant contract as the "Chief Financial Officer" for A Simple Solution.

85.     It was a further part of the scheme to defraud that Defendant Brumfield and Defendant Crowder fraudulently made it appear that A Simple Solution was an established and reputable company by:

a.  having Person A sign the September 26, 2012 administrative assistant contract as the "Branch Manager" for A Simple Solution;

b.  claiming that A Simple Solution had another office at 234 N Street NW, Suite 1, Washington, DC; and

c.  referring to "Marie Matthews" as the "HR Manager" for A Simple Solution.

86.     It was a further part of the scheme to defraud that Defendant Crowder concealed her connection to Person A and Person B from DCPS officials.

87.     It was a further part of the scheme to defraud that Defendant Crowder fraudulently represented on the Market Survey and D&F that A Simple Solution (a) has staff with educational

experience; and (b) specializes in providing staff to educational institutions throughout the United States, when in fact it had no staff and had never performed any work.

88.     It was a further part of the scheme to defraud that Defendant Brumfield and Defendant Crowder used Defendant Crowder's knowledge of the $300,000 cost estimate for the administrative assistants to submit a price quote of $298,800 for A Simple Solution.

89.     It was a further part of the scheme to defraud that Defendant Crowder did not include any DCSS vendors in the Market Survey who had submitted price quotes below $300,000 to make A Simple Solution appear to be the best choice on price.

## The Execution of the Scheme

90.     On or about the dates listed below, in the District of Columbia and elsewhere, Defendant Brumfield, Defendant Crowder, and Person B, for the purpose of executing and attempting to execute the above-described scheme and artifice, did knowingly cause to be delivered by the U.S. Postal Service according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed the following mail matter:

| Count | Date | Mailing |
|-------|------|---------|
| One | December 14, 2012 | Check for $25,825 from the District of Columbia Government payable to A Simple Solution |
| Two | February 26, 2013 | Check for $19,343.75 from the District of Columbia Government payable to A Simple Solution |
| Three | May 6, 2013 | Check for $19,900 from the District of Columbia Government payable to A Simple Solution |
| Four | June 25, 2013 | Check for $19,200 from the District of Columbia Government payable to A Simple Solution |
| Five | August 2, 2013 | Check for $15,600 from the District of Columbia Government payable to A Simple Solution |

**(Mail Fraud, in violation of Title 18, United States Code, Section 1341)**

## COUNTS SIX THROUGH EIGHT
### (Wire Fraud)

91.     Paragraphs 1 through 77, and 79 through 89 are incorporated here.

**The Execution of the Scheme**

92.     On or about the dates listed below, in the District of Columbia and elsewhere, Defendant Brumfield, Defendant Crowder, and Person B, for the purpose of executing the above-described scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, and sounds:

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| Six | October 19, 2012 | Email from "Marie Matthews" to Defendant Crowder attaching the A Simple Solution invoice for the September 10, 2012 through September 28, 2012 billing period |
| Seven | October 21, 2012 | Unsigned email from simplesolutions.staff@gmail.com to Defendant Crowder attaching a blank A Simple Solution time sheet |
| Eight | December 6, 2012 | Email from "Marie Matthews" to a DCPS Office of Chief Financial Officer employee inquiring about a $25,825 A Simple Solution invoice for October services |

**(Wire Fraud, in violation of Title 18, United State Code, Section 1343)**

**COUNT NINE**
**(Conspiracy to Launder Monetary Instruments)**

93.     Paragraphs 1 through 77, and 79 through 89 are incorporated here.

94.     Beginning in or about July 2012 through on or about August 29, 2013, in the District of Columbia and elsewhere, Defendant Brumfield and Defendant Crowder did knowingly and willfully conspire, combine, agree, and confederate with each other to violate Title 18, United States Code, Section 1956(a)(1)(A)(i), that is, to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is Mail Fraud and Wire Fraud, with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

### The Purpose of the Conspiracy

95.     It was a purpose of the conspiracy for Defendant Brumfield to reward Defendant Crowder for Defendant Crowder's role in steering the administrative assistant contracts to A Simple Solution and Defendant Crowder's continuing assistance as an OSE manager in promoting the success of their fraudulent scheme, by paying Defendant Crowder with fraudulently obtained proceeds from DCPS.

### The Manner and Means of the Conspiracy

96.     It was a part of the conspiracy that Defendant Brumfield deposited DCPS checks payable to A Simple Solution into Bank of America account no. XXXX XXXX 2803 held in the name of A Simple Solution.

97.     It was a further part of the conspiracy that Defendant Brumfield caused DCPS funds deposited into Bank of America account no. XXXX XXXX 2803 to be transferred to Defendant Crowder's Bank of America account no. XXXX XXXX 8726.

**(Conspiracy to Launder Monetary Instruments, in violation of Title 18, United States Code, Section 1956(h))**

### COUNTS TEN THROUGH TWELVE
**(Laundering of Monetary Instruments)**

98.     Paragraphs 1 through 77, and 79 through 89 are incorporated here.

99.     On or about the dates and in the amounts set forth below, in the District of Columbia and elsewhere, Defendant Brumfield and Defendant Crowder did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which involved the proceeds of specified unlawful activity, that is Mail Fraud and Wire Fraud, with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to

conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Financial Transaction |
|-------|------|--------|----------------------|
| Ten | February 4, 2013 | $2,129.20 | Transfer from Bank of America account no.  XXXX XXXX 2803 to Bank of America account no. XXXX XXXX 8726 |
| Eleven | August 8, 2013 | $2,656.22 | Transfer from Bank of America account no.  XXXX XXXX 2803 to Bank of America account no. XXXX XXXX 8726 |
| Twelve | August 8, 2013 | $3,500 | Transfer from Bank of America account no.  XXXX XXXX 2803 to Bank of America account no. XXXX XXXX 8726 |

**(Laundering of Monetary Instruments, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i))**

## COUNT THIRTEEN
### (First Degree Fraud)

100.    Paragraphs 1 through 77, and 79 through 89 are incorporated here.

101.    Beginning in or about July 2012 through on or about April 9, 2014, within the District of Columbia, Defendant Brumfield and Defendant Crowder engaged in a scheme and systematic course of conduct with intent to defraud and to obtain property of the District of Columbia by means of materially false and fraudulent pretenses, representations, and promises, and thereby obtained property and caused the District of Columbia to lose property, the value of which was $1,000 or more.

**(First Degree Fraud, in violation of Title 22, District of Columbia Code, Sections 3221(a), 3222(a)(1))**

## FORFEITURE ALLEGATION

1.    Upon conviction of an offense alleged in Counts One through Eight, Defendant Brumfield shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.

§ 2461(c).  The United States will seek a forfeiture money judgment against Defendant Brumfield in the amount of at least $222,087.50.

2.       Upon conviction of an offense alleged in Counts Nine through Twelve, the convicted defendant shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).  The United States will seek a forfeiture money judgment against the convicted defendant in an amount equal to the value of any property, real or personal, involved in the offense, or any property traceable to such property.

3.       If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:


FOREPERSON



ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA